IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ERIC WILSON                                                                                           PLAINTIFF

v.        Case No. 4:17cv191-BSm

JURY TRIAL DEMANDED

CITY OF LITTLE ROCK, ARKANSAS;
KENTON BUCKNER, in his individual and official
capacity as Chief of Police for the City of Little Rock;
WILLIE CHRISTOPHER, in his individual and official capacity as a
Little Rock Police Officer; and
JOHN COMEAU, in his individual and official capacity
as a Little Rock Police Officer                                                                  DEFENDANTS

**COMPLAINT**

This case assigned to District Judge Miller
and to Magistrate Judge _____

Plaintiff, Eric Wilson, by and through counsel, the Koch Law Firm, P.A., for his Complaint against Defendants, states:

INTRODUCTION

1.      The United States finds itself in a crisis involving the public perception of police misconduct. In one city after another across the nation there have been events ranging from peaceful demonstrations to violent riots and murders of police officers, usually immediately following—and clearly in response to—the use of force by police against citizens. Often, these use of force incidents are accompanied by videos that purport to show wrongdoing on the part of police.

2.      With the development of digital camera and cellular telephone technology, public video recording is now very widespread. A large percentage of persons now have cell phones in their constant possession, and many of these cell phones are equipped with high quality cameras. Likewise, the ability to record and store hours of digital images in a cost-effective manner has

1

prompted some law enforcement agencies—partially because of the large number of complaints against police in our nation—to outfit their police vehicles and police uniforms with cameras that capture video and audio of all or most interactions that those police have with the citizens they are sworn to protect. Also, many business and private property owners have installed video cameras that capture events on their property, including events involving police interactions with citizens.

3. Other developments in technology have provided a forum for the public to share and view these videos in a simple manner without significant cost or technical expertise. Unlike years past—when a video would only receive widespread viewing and attention if it were picked up by a large news agency—a private individual now has the ability to post videos to online sources (such as YouTube and Facebook) that can be shared and seen by worldwide audiences. Videos may be posted within a few minutes of being recorded with very little cost or resources, while requiring the person posting the video to have minimal technical skills.

4. Police have resisted the rights of citizens to record police activities. Recognizing the value of such videography, some states (including Arkansas) have enacted legislation specifically protecting an individual's rights to record police activity, and to prohibit police from interfering with—or retaliating against—these filmmakers.

5. Indeed, incidents where police have tried to destroy or erase this type of film footage have prompted some civil rights organizations, including the ACLU, to create "mobile justice" applications for cellular telephones that will cause video footage to be automatically uploaded to a media "cloud," thus protecting the digital images from destruction or deletion by police.

6. The result of this proliferation of video paints a discouraging picture of the reliability and conduct of our nation's police departments and police culture.

7. This widespread use of digital camera technology has resulted in the discovery nationwide of thousands of examples—perhaps beginning with the famous Rodney King case—of police officers apparently abusing their authority, violating the civil rights of citizens, and violating the law themselves, in spite of their oath and duty to serve and protect the public and to obey the laws of our land. Social media, news websites, and other media outlets are replete with examples of police stating in their written reports that one series of events occurred to justify their use of physical force and/or arrest, while a subsequent review of film footage of the incident shows a completely different series of events than those described in the police report.

8. The near-constant flow of videos of police misbehaving is the largest factor pushing the current police crisis in the United States, leading to civil unrest, violence, deaths, and demands for changes to our system of policing in this country. This has caused a loss of faith in our law enforcement officers, and it threatens to plunge our society into more violence and unrest if it is not addressed by our law enforcement agencies and our courts.

9. In the United States—before the widespread availability of digital video—police have enjoyed several decades of overwhelming support by our communities and our courts.

10. Internal complaints against police officers seldom have resulted, historically, in any action being taken against the officers. One recent study found that of 29,000 complaints filed against police over a four-year period from 2011-2015 in the city of Chicago, only 2.6 percent were sustained. (An even lower percentage of complaints by African American citizens were sustained.) *See* "Police Abuse Complaints by Black Chicagoans Dismissed Nearly 99 Percent Of The Time," *Huffington Post*, December 17, 2015.

11. Plaintiffs in federal lawsuits against police don't fare much better. Through legal defenses such as qualified immunity, and via the manner that courts currently use the summary judgment process to disallow most lawsuits involving police from ever reaching a jury, victims of police misconduct find that trying to seek a lawful path to justice for the wrongs they have suffered at the hands of police officers is an unnecessarily long, difficult, expensive, and discouraging process. Many victims of civil rights violations—while they may not be so poor as to qualify to proceed *in forma pauperis*—simply cannot afford the expensive filing fees, depositions, and other costs associated with such litigation. Attorneys willing to take on such expensive and time-consuming litigation, especially considering the poor likelihood of surviving summary judgment and profiting from the cases, are sparse.

12. Indeed, many in our society have decided that there is no justice to be found in our courts when the plaintiff is a person without a voice in society, and the defendant is a police officer. Therefore, some groups have decided that the only remedy or relief available to them—and the only hope for positive change—is in the form of the demonstrations and riots that have caused millions of dollars in property damage, as well as violence that has resulted in numerous injuries and deaths on both sides of the issue.

13. This attitude of hopelessness by victims of police brutality and misconduct is apparently justified, as each day more videos prove to us that police have misused their authority—and gotten away with it—in violation of the public trust. Thus, the result of this wholehearted and blind faith support of police by our communities and courts—wherein police administrators and courts have ignored, disregarded, and dismissed all but the most egregious cases wherein plaintiffs show clear and convincing evidence of wrongdoing (usually through video, because absent video the testimony of police is almost always credited over the testimony

of other witnesses)—has not been successful or justified, and it threatens to tear at the social fabric that maintains law and order in our country. That is, this blind faith in our police has had the opposite result that was intended: instead of instilling faith in our police, it has actually led to a serious and widespread breakdown in the public trust for police; instead of ensuring peace and tranquility in our communities, it has resulted in fear, mistrust, violence, and unrest.

14. Indeed, our refusal as a nation to take seriously those complaints against police who victimize our citizens (as well as the failure to hold accountable and punish the agencies that continue to employ these sub-standard police officers and/or fail to train them) has put the lives and wellbeing of our *good* police officers at risk.

15. Of course, the most egregious allegations against police involve death or serious physical injury; these are the cases that get the most media attention and that lead to demonstrations and riots in our cities. Cases involving police misconduct that result in less severe physical injuries and other damages, such as the one being brought before the Court herein today, go largely un-addressed.

16. It is apparent that positive change will have to begin on a case-by-case basis that includes confronting police who violate civil rights even when nobody gets killed. If we always wait until there is a loss of life, change is likely to be slow, expensive, and painful for our nation. According to the now-famous "broken window theory" of criminology, reducing crimes in society can best be accomplished by aggressively addressing lower-level offenses that do not lead to physical injury or death, rather than reacting only to the most severe cases.

17. To that end, the Plaintiff herein brings before the Court the following Complaint:

PARTIES AND JURISDICTION

18. This is an action to secure a remedy for damages to an African American citizen against law enforcement officers for unlawful detention and excessive use of force under 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; the Arkansas Civil Rights Act of 1993, codified at Ark. Stat. Ann. § 16-123-105; and the Constitution of the State of Arkansas.

19. Plaintiff Eric Wilson was at all times relevant to this Complaint an adult resident of Pulaski County, Arkansas.

20. Defendant City of Little Rock is a municipal corporation organized and existing under the laws of the State of Arkansas and located in Pulaski County, Arkansas. The Little Rock Police Department (hereinafter "LRPD") is a department of the City of Little Rock.

21. Defendant Kenton Buckner was at all times relevant to this Complaint the chief of police of Little Rock, Arkansas. Defendant Buckner was responsible for the day-to-day operation of the Little Rock Police Department, was responsible for the training, supervision, and discipline of the police officers of the department, and was the final policymaker with respect to law enforcement operations for Little Rock, Arkansas.

22. Defendant Willie Christopher was at all times relevant to this Complaint employed as a police officer in Little Rock, Arkansas.

23. Defendant John Comeau was at all times relevant to this Complaint employed as a police officer for Little Rock, Arkansas.

24. This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3), and this Court has supplemental jurisdiction over Plaintiff's state law

claims under 28 U.S.C. § 1367. This Court has personal jurisdiction over the parties, and venue is proper under 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS OF FACT

25. Plaintiff is legally blind, and can only see basic shapes and images. He usually uses a cane to assist him in walking, but can walk without his cane in certain areas if he is very familiar with his surroundings.

26. On or about June 1, 2015, Plaintiff was walking on 65th Street in Little Rock, without the assistance of his cane. Plaintiff was alone, was not close to any other people, was walking normally toward his nearby residence, and was simply minding his own business.

27. Defendants John Comeau and Christopher approached Plaintiff near 65th Street and Wakefield Drive, reportedly for the purpose of checking his "welfare."

28. Comeau and Christopher had no probable cause nor reasonable suspicion to detain Plaintiff or to check his identification. If concerned about his "welfare," they could have observed him as he walked down the street toward his home, but they had no reason to make demands of him.

29. Nevertheless, these officers got out of their patrol car and approached Plaintiff, shouting for him to leave his pathway and come over to them. Plaintiff complied.

30. Defendant Christopher grabbed Plaintiff and threw him violently to the ground, causing injury, then Christopher handcuffed Plaintiff and made Plaintiff sit for several minutes on the sidewalk while the officers investigated Plaintiff's identity.

31. Eventually, Plaintiff was released without charges.

32. The police officers filed a report wherein they stated that Wilson did not follow their orders and resisted efforts to be handcuffed. A video of the encounter belies report written by Comeau and Christopher.

33. Plaintiff subsequently filed a formal complaint against the officers with Defendants Buckner and the City of Little Rock.

34. Representatives of the City of Little Rock stated that they investigated this matter thoroughly and reported that Defendants Comeau and Christopher properly followed the policies and procedures of the City of Little Rock, thus ratifying the officers' behavior and actions.

35. Defendants Buckner and City of Little Rock train police officers to approach and detain citizens—especially African American citizens—without reasonable suspicion or probable cause.

36. Defendants Buckner and City of Little Rock train LRPD police officers to use excessive and unnecessary force, especially against African American citizens.

37. Defendants Buckner and City of Little Rock have failed to train LRPD police officers to properly interact with persons with disabilities.

## COUNT ONE: 42 U.S.C. § 1983

38. Plaintiff realleges the foregoing as if fully set out herein.

39. The above-described use of force by the City of Little Rock and the members of the Little Rock Police Department was a violation of 42 U.S.C. § 1983, via the following constitutional rights:

   a. The due process clause of the Fourteenth Amendment to the United States Constitution;
   b. The due process clause of the Fifth Amendment to the United States Constitution;
   c. The right to be free from unreasonable search and seizure under the Fourth Amendment to the United States Constitution;

40. The actions of Defendant Comeau and Defendant Christopher on this count were sufficiently egregious such as to justify punitive damages against them individually.

### COUNT TWO: THE ARKANSAS CIVIL RIGHTS ACT

41. Plaintiff realleges the foregoing as if fully set out herein.

42. The above-described use of force by the City of Little Rock and the members of the Little Rock Police Department was a violation of Arkansas Civil Rights Act as codified at Ark. Stat. Ann. § 16-123-105, based on the protections of the Arkansas State Constitution and other applicable rights and protections under Arkansas law.

43. The actions of Defendant Comeau and Defendant Christopher on this count were sufficiently egregious such as to justify punitive damages against them individually.

### COUNT THREE: VIOLATIONS OF THE ARKANSAS CONSTITUTION

44. Plaintiff realleges the foregoing as if fully set out herein.

45. The above-described use of force by the City of Little Rock and the members of the Little Rock Police Department was a violation of Arkansas Constitution's guarantees of due process and the right to be free from unreasonable search and seizure.

46. The actions of Defendant Comeau and Defendant Christopher on this count were sufficiently egregious such as to justify punitive damages against them individually.

### DAMAGES

47. As a direct and proximate result of said violations of Plaintiff's constitutional and statutory rights, Plaintiff was made to suffer physical and emotional trauma, humiliation, indignity, and embarrassment. Furthermore, Plaintiff was unlawfully deprived of his liberty.

WHEREFORE, Plaintiff prays for judgment against Defendants, for compensatory damages against all Defendants, for punitive damages against Defendants Comeau and Christopher, for costs and attorney fees, and for all other proper relief to which he is entitled.

Respectfully submitted,

Koch Law Firm
2024 Arkansas Valley Drive, Suite 707
Little Rock, Arkansas 72212
(501) 223-5310 office
(501) 223-5311 facsimile
reggie@reggiekoch.com

By: _____
Reggie Koch, Ark. Bar #2005125